UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY JONES,

        Petitioner,

                              CASE NO. 12-14991
v.                                   HONORABLE LAWRENCE P. ZATKOFF

STEVE RIVARD,

        Respondent.

_____/

**OPINION AND ORDER
DENYING PETITIONER'S REQUEST FOR APPOINTMENT OF COUNSEL
AND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, BUT
GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE
TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      This matter is pending before the Court on petitioner Stanley Jones' *pro se* habeas corpus petition under 28 U.S.C. § 2254. Jones is incarcerated at Chippewa Correctional Facility in Kincheloe, Michigan. His habeas petition challenges two firearm convictions on the ground that his trial attorney was ineffective for failing to request a jury instruction on self defense. Although determining whether defense counsel was constitutionally ineffective is a close question, the Court finds that the state appellate court's ruling on the issue and its decision to affirm Jones' conviction were not unreasonable. Therefore, under the highly deferential standard applied to state court decisions on federal habeas corpus review, the habeas petition must be denied.

**I. Background**

      Jones was charged in Wayne County, Michigan with being a felon in possession of a firearm, *see* Mich. Comp. Laws § 750.224f, and possessing a firearm during the commission of a felony (felony firearm), second offense, *see* Mich. Comp. Laws § 750.227b(1). The charges arose from the

fatal shooting of Marcus Perry on April 2, 2009, in Detroit, Michigan. The record before the Court indicates that Jones was not charged with a homicide because he and Perry exchanged gunfire during the incident, and prosecutors thought they would be unable to prove that Jones did not act in self defense. The prosecutor chose instead to charge Jones with the two firearm offenses.

Jones was tried before a jury in Wayne County Circuit Court where the evidence established that,

> [i]n March 2009, [Jones] saw Perry hit [Jones'] ex-girlfriend, Shantle Hayden, while Perry and Hayden were arguing in front of [Jones'] house. When Perry realized that [Jones] had observed the incident, Perry "flashed his gun" at [Jones]. [Jones] did not confront Perry or call the police. Approximately three weeks later, on April 2, 2009, Perry and Hayden were again arguing and shouting in the street while [Jones] was in his driveway cleaning his car. According to [Jones'] statement to the police, he went inside his house and retrieved a gun because Perry was armed with a gun. [Jones] placed the gun in his waistband, returned outside, and continued cleaning his car. Although the evidence differs regarding who fired the first shot, it is undisputed that [Jones] and Perry thereafter engaged in a gunfight, during which [Jones] shot Perry in the chest, killing him. After the shooting, [Jones] fled in his car. He turned himself in to the police on April 21, 2009, and told the police that the gun was in the trunk of his car, parked at the Motor City Casino. The police recovered the gun from [Jones'] car at the casino.

*People v. Jones*, No. 297690, 2012 WL 164246, at *1 (Mich. Ct. App. Jan. 19, 2012).[1]

Jones did not testify or present any witnesses, but his videotaped statement to the police was played for the jury. In his statement to the police, Jones said that he fired his gun in Perry's direction after he heard at least two gunshots.

Shantle Hayden also did not testify at trial. The primary evidence came from Perry's girlfriend, Asya Collins, who testified on direct examination by the prosecutor that Jones pulled a

---

[1] This summary of the facts is supported by the record and is entitled to a presumption of correctness because Petitioner has not rebutted the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2

gun from his side, shot it, and then chased Perry around his car. Collins claimed that she ducked behind the car and heard about five more shots, but she did not know who was shooting. She was sure, however, that Jones fired the first shot.

On cross-examination, Collins admitted that she lied to the police when she told them that her boyfriend never fired any shots. She also admitted that her testimony during an investigative hearing conducted by the prosecutor differed from her trial testimony. During the investigative hearing, she said that she heard the first gunshot and that she did not see anybody pull the trigger of a gun.

On March 17, 2010, the jury found Jones guilty, as charged, of felon in possession of a firearm and felony firearm. The trial court sentenced Jones as a repeat offender to five years in prison for the felony firearm conviction and to a consecutive term of six to twenty years for the felon-in-possession conviction.

Jones raised his habeas claim on direct appeal from his convictions, arguing that defense counsel's failure to request a jury instruction on self-defense for the felon-in-possession charge deprived him of his constitutional right to effective assistance of counsel. The Michigan Court of Appeals initially remanded the case to the trial court so that Jones could file a motion for new trial. The Court of Appeals retained jurisdiction, but ordered the trial court to make findings of fact and a determination on the record. *See People v. Jones*, No. 297690 (Mich. Ct. App. Jan. 28, 2011), Pet. for Writ of Habeas Corpus, App. A.

On remand, the trial court conducted an evidentiary hearing and decided to reverse Jones' convictions and order a new trial. The trial court subsequently concluded that it had no authority to grant a new trial because the Michigan Court of Appeals had retained jurisdiction. The trial court

then signed an order stating that Jones had received ineffective assistance of counsel at trial. *See People v. Jones*, No. 09-14002-01 (Wayne Cnty. Cir. Ct. Apr. 8, 2011), Pet. for Writ of Habeas Corpus, App. C

The Michigan Court of Appeals subsequently vacated the trial court's decision and affirmed Jones' convictions and sentences. *See Jones*, Mich. Ct. App. No. 297690, 2012 WL 164246. The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Jones*, 493 Mich. 865; 820 N.W.2d 917 (2012) (table).

On November 9, 2012, Jones filed his habeas corpus petition, raising the same claim that he presented to the state courts on direct appeal. The habeas petition includes a request for appointment of counsel.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

> Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

### III. Analysis

#### A. Petitioner's Claim and Argument

Jones alleges that he is entitled to a new trial, because defense counsel's failure to request a jury instruction on self defense for the felon-in-possession charge violated his constitutional right to effective assistance of counsel. To support his claim, Jones points to (1) his admissions to the

police that he possessed a handgun during the incident and shot the victim and (2) defense counsel's stipulation that Jones was previously convicted of a felony and was not eligible to possess a firearm. (Trial Tr. Vol. I, 107, Mar. 15, 2010) In light of the stipulation and admissions, Petitioner maintains that the only real issue was whether his actions were justified and, therefore, defense counsel should have requested a jury instruction on self defense. Jones claims that, without the instruction, there was no defense to the charges, and the jury lacked the option of finding him not guilty as a result of acting in self defense.[2]

As further proof that defense counsel should have requested a jury instruction on self defense, Jones notes that prosecutors elected not to charge him with a homicide because they did not think they could prove beyond a reasonable doubt that he was not acting in self defense. *See* Pet. for Writ of Habeas Corpus, App. B. Additionally, defense counsel apparently knew that Jones wanted to assert a defense of self-defense, because Jones' former attorney withdrew from the case when Jones insisted on pursuing a defense of self-defense after being advised that the defense did not apply to the facts in his case. Furthermore, defense counsel argued to the jury that Jones "had a legitimate self-defense claim" and that Jones' only options during the incident were to die from Mr. Perry's gunfire or to risk being charged with a crime. (Trial Tr. Vol. II, 55-57, Mar. 16, 2010.) Petitioner argues that, despite this record, defense counsel declined to request a jury instruction on self defense. The jurors, moreover, wrote a note on the verdict form, stating:

> Dear Judge Bill, this has been a very difficult decision for all twelve of us to make. We request that you take into consideration when you sentence the circumstances

---

[2] The Michigan criminal jury instruction on the use of deadly force in self defense states that "[a] person has the right to use force or even take a life to defend [himself/herself] under certain circumstances," and "[i]f a person acts in lawful self-defense, that person's actions are justified and [he/she] is not guilty" of the charged crime. Mich. CJI 7.15(1).

surrounding the incident.

(Trial Tr. Vol. III, 6, Mar. 17, 2010.) Jones states that the only reasonable interpretation of this note was that the jury regretted not having the option of acquitting him on the basis of self defense. Petitioner claims that, had the jury instruction been given, the jury likely would have reached a different verdict.

Jones contends that the decision of the Michigan Court of Appeals is clearly erroneous and that the Court of Appeals gave an impermissibly limited interpretation of the Self Defense Act and the Michigan Supreme Court's decision in *People v. Dupree*, 486 Mich. 693; 788 N.W.2d 399 (2010). Jones also contends that the Court of Appeals should have deferred to the state trial court's findings and conclusion

### B. Clearly Established Federal Law

To prevail on his claim, Jones must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

> evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Id.* at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Jones must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### C. The Relevant State Law

Jones' claim must be viewed in light of the Michigan Self Defense Act and state court decisions on the right to assert self defense in a case charging the defendant with being a felon in possession of a firearm. The Self Defense Act, Mich. Comp. Laws § 780.971, *et seq.*, provides in relevant part that

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

8

the following applies:

>(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Mich. Comp. Laws § 780.972.

In *People v. Dupree*, 284 Mich. App. 89, 91-92; 771 N.W.2d 470, 473-74 (2009) ("*Dupree I*"), a panel of the Michigan Court of Appeals held for the first time that a claim of self-defense applies to a charge of felon in possession of a firearm. The Court of Appeals stated the purpose of the felon-in-possession statute is "to ensure that those persons who are more likely to misuse firearms do not maintain ready possession of them." *Id*.., 284 Mich. App. at 106; 771 N.W.2d at 481. The Court of Appeals determined that "[t]his purpose would be severely undermined if former felons were permitted to arm themselves whenever they happened to have some generalized fear of being attacked." *Id*. Continuing, the Court of Appeals stated that a defendant may raise a defense of self defense to being a felon in possession of a firearm by introducing evidence from which the jury could conclude all of the following:

>(1) The defendant or another person was under an unlawful and immediate threat that was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, and the threat actually caused a fear of death or serious bodily harm in the mind of the defendant at the time of the possession of the firearm.
>
>(2) The defendant did not recklessly or negligently place himself or herself in a situation where he or she would be forced to engage in criminal conduct.
>
>(3) The defendant had no reasonable legal alternative to taking possession, that is, a chance to both refuse to take possession and also to avoid the threatened harm.
>
>(4) The defendant took possession to avoid the threatened harm, that is, there was a direct causal relationship between the defendant's criminal action and the avoidance of the threatened harm.

>     (5) The defendant terminated his or her possession at the earliest possible opportunity once the danger had passed.

*Id*., 284 Mich. App. at 107-08, 771 N.W.2d at 482.

Following Jones' trial, the Michigan Supreme Court affirmed the Court of Appeals decision in *Dupree I*, holding "that the traditional common law affirmative defense of self defense may be interposed to a charge of being a felon in possession of a firearm" if the defense is supported by sufficient evidence. *Dupree*, 486 Mich. at 696-97; 788 N.W.2d at 401("*Dupree II*"). The state supreme court explained that the defense was available in cases where the defendant demonstrated that "he honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself." *Id*., 486 Mich. at 697; 788 N.W.2d at 401.

### D. Application

#### 1. The Evidentiary Hearing and the Trial Court's Ruling

At the post-conviction hearing in state court, defense counsel testified that his decision not to request a jury instruction on self defense was based on his belief that Petitioner could not satisfy the factors outlined in *Dupree I*. He did not think Jones satisfied the third factor, which requires showing that there was no legal alternative to taking possession of a firearm. Defense counsel pointed out that Jones could have gone in his house and stayed there; instead, he exited his house with a gun. Defense counsel stated that, due to the restrictiveness of *Dupree*, he did not think he could in good faith ask the trial court for an instruction on self defense or defense of another person. He thought his request would be denied. (Mot. Hr'g, 6-7, 11-13, Mar. 18, 2001.)

Defense counsel admitted at the hearing that the self-defense instruction would have given Jones a defense and that it would not have been detrimental to Jones' case to have requested an instruction on self defense. (*Id*. at 7.) He also admitted that he knew the Wayne County

10

prosecutor's office denied a warrant for a homicide charge on the basis that there was a plausible claim of self defense. (*Id*. at 8-9.) He said that, if he had the opportunity to do things differently, he would ask for a jury instruction on self defense. He stated that the jury instruction would have given Jones a defense, and he thought that the Michigan Supreme Court broadened the defense in *Dupree II* by stating that self defense was a common law right. (*Id*. at 14-15.)

No other witnesses testified at the evidentiary hearing, and, following oral arguments, the trial court stated that it was taking into consideration the totality of the circumstances, including the jury's note to the trial court, the prosecutor's memorandum about having to rebut a claim of self defense, and the *Dupree* decision. The court ruled that Jones was entitled to a reversal of his convictions and a new trial because defense counsel had deprived Jones of a possible defense. (*Id*. at 38-39.)

### 2. The Reasonableness of the Michigan Court of Appeals Opinion

The Michigan Court of Appeals subsequently vacated the trial court's decision and affirmed Jones' convictions because, in its opinion, defense counsel's failure to request a jury instruction on self defense did not constitute ineffective assistance of counsel. This Court agrees. Under *Dupree I* and the Self Defense Act, a defendant may assert the defense of self defense if the defendant reasonably believed that possession of a firearm and the use of deadly force was necessary to prevent death or great bodily harm to himself or another individual. The evidence in this case established that,

> [Jones] possessed the firearm before any threat of imminent death or serious bodily harm arose. [Jones] told the police that he saw Perry and Hayden arguing in front of Perry's house and that Perry had a gun. [Jones] told Hayden to leave Perry alone and go home. [Jones] admitted that he went into his house and retrieved his gun because he did not like the situation and thought Perry might "go crazy." He stated that he did not want to be "out there" and have Perry start shooting at him. [Jones]

admitted that Perry did not threaten him or say anything to him that day, but claimed that he did not know what Perry was going to do since he had a gun and was arguing with Hayden. By the time that [Jones] returned outside, Perry had gone inside his house, and Hayden was arguing with Perry's aunt before Hayden finally left. When [Jones] was walking to get another towel to wipe down his car, he heard gunshots. He claimed that he "couldn't believe it." He further stated that, at that point, he was not concerned about Perry because he had no personal "beef" with Perry and the argument was between Perry and Hayden and did not involve him.

*Jones*, 2012 WL 164246, at *3.[3]

Although Jones told Investigator Brooks that he felt threatened by Perry, the Michigan Court of Appeals correctly noted that,

based on [Jones'] own version of the incident, he did not possess the firearm in response to an imminent threat of death or serious bodily harm. Rather, he possessed the gun because Perry and Hayden were fighting and he did not know what would happen.

*Id*. at *4.

There also was no basis for concluding that Jones acted in defense of Hayden. He informed Investigator Brooks that, although Hayden had approached him, she was not "telling on" Perry. According to Jones, Hayden knew that he was not going to protect her, and she may have approached him for money. Additionally, Asya Collins testified that Hayden walked away at the beginning of the incident – when Collins and Perry first came out the house – as if she (Hayden) knew what was about to happen. (Trial Tr. Vol. I, 121, Mar. 15, 2010.)

The Michigan Court of Appeals reasonably opined that Jones had a generalized fear of being attacked, as opposed to an honest and reasonable belief that possession and use of a firearm was necessary to prevent imminent death or great bodily harm. The Court of Appeals concluded that,

---

[3] This evidence is supported by the DVD of Petitioner's interview with Investigator Latonya Brooks. *See* Dkt. #11. A videotape of the interview was played for Petitioner's jury during Investigator Brooks' testimony. (Trial Tr. Vol. II, 47, Mar. 16, 2010.)

because Jones was not entitled to a self-defense instruction under either *Dupree I* or the Self Defense Act, defense counsel did not render ineffective assistance by failing to request the instruction.

Jones' claim that the Michigan Court of Appeals misinterpreted or misapplied the Self Defense Act or the *Dupree* decision is not a basis for habeas relief, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, (1990). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

### 3. Additional Considerations

Petitioner claims that defense counsel's interpretation of the Michigan Court of Appeals decision in *Dupree I* was too limited. Defense counsel acknowledged at the state evidentiary hearing that the Michigan Supreme Court's decision in *Dupree II* was not as restrictive as the interpretation given by the Michigan Court of Appeals in *Dupree I*. But *Dupree II* was decided after Jones' trial. Consequently, defense counsel cannot be blamed for failing to assert self defense under the allegedly broader interpretation of self defense given in *Dupree II*. Defense counsel was aware of the law as it applied at the time, and he made a logical decision not to request an inapplicable jury instruction.

The fact that defense counsel admittedly had nothing to lose by requesting a jury instruction on self defense also is not a basis for granting habeas relief, because no Supreme Court decision establishes a "nothing to lose" standard for evaluating ineffective-assistance-of-counsel claims.

*Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Instead, such relief may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland* . . . ." *Id.*

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro* [v. *Landrigan*, 550 U.S. 465, 473 (2007)]. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123.

Self defense or defense of others was not a viable defense in this case, because Jones had a reasonable alternative to possessing and using a firearm. He also lacked a reasonable belief that possessing and using a firearm was necessary to prevent imminent death or great bodily harm to himself or another person. Consequently, defense counsel's failure to request a jury instruction on self defense did not amount to deficient performance. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success," *Mirzayance*, 556 U.S. at 123, and an attorney's failure to make a meritless argument "is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.), *cert. denied*, 134 S. Ct. 513 (2013).

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Jones has not shown that the state appellate court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. The Court therefore denies the habeas corpus petition and Jones' request for appointment of counsel.

14

**IV. Certificate of Appealability and Leave to Proceed *In Forma Pauperis* on Appeal**

Before a habeas petitioner may appeal a habeas court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

When, as here, a district court has rejected the constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

Reasonable jurists could disagree with this Court's resolution of Jones' constitutional claim or could conclude, at a minimum, that the issue deserves encouragement to proceed further. The Court therefore grants a certificate of appealability. The Court also grants leave to proceed *in forma pauperis* on appeal if Jones decides to appeal this decision, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V. Conclusion**

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is GRANTED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated: December 12, 2014